IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 2, 2020

## IN RE BENTLEY Q.

**Appeal from the Chancery Court for Sullivan County**
**No. 17-CB-26152M          John S. McLellan, III, Judge**

_____

**No. E2019-00957-COA-R3-PT**

_____

In this termination of parental rights action, the father has appealed the trial court's final order terminating his parental rights based on several statutory grounds. The maternal grandparents of the minor child, Bentley Q. ("the Child"), filed a petition to terminate the mother's and father's parental rights and to allow the maternal grandparents to adopt the Child. As pertinent to this appeal, the trial court found by clear and convincing evidence that the father had (1) abandoned the Child by willfully failing to visit the Child and (2) failed to manifest an ability and willingness to assume custody of or financial responsibility for the Child. The trial court also found by clear and convincing evidence that it was in the Child's best interest that the father's parental rights be terminated.[1] The father has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which RICHARD H. DINKINS and KENNY W. ARMSTRONG, JJ., joined.

Nicholas A. Schaefer, Kingsport, Tennessee, for the appellant, George C.

Kyle D. Vaughan,[2] Kingsport, Tennessee, for the appellees, Melissa Q. and Charles Q.

_____

[1] The trial court also terminated the mother's parental rights in the same order. Inasmuch as the mother is not participating in this appeal, we will confine our analysis to the facts and issues relevant to Father's appeal.

[2] Mr. Vaughan was substituted as counsel for the appellees on January 9, 2020. On January 21, 2020, after the appellees' brief was filed in this matter, the Tennessee Supreme Court suspended Mr. Vaughan on a temporary basis pursuant to Tennessee Supreme Court Rule 9, § 12.3. Pursuant to Rule 9, § 28.1, Mr. Vaughan's temporary suspension was effective upon entry with thirty days for him to conclude matters on behalf of existing clients. Thus, Mr. Vaughan cannot proceed further as counsel for the appellees in this matter unless permission is granted by the Tennessee Supreme Court.

**OPINION**

**I. Factual and Procedural Background**

This appeal arose from the order of the Sullivan County Chancery Court ("trial court") terminating the parental rights of the appellant, George C. ("Father"), and finding that it would be in the Child's best interest for the Child's maternal grandparents ("Petitioners") to adopt the Child. Father was married to the Child's mother, Kayla Q. ("Mother"), when the Child was born in January 2012. Mother and Father subsequently divorced in February 2014. On September 29, 2017, Petitioners filed a petition seeking to terminate the parental rights of Father and Mother. Petitioners explained that the Child had resided solely with them since the age of two and that they had acquired legal custody of the Child on October 15, 2015.

As grounds for termination of Father's parental rights, Petitioners averred that Father had abandoned the Child by (1) willfully failing to visit him; (2) willfully failing to financially support him; and (3) in the event Father was incarcerated at the time of the petition's filing or had been incarcerated in the four months preceding the filing of the petition, by engaging in conduct prior to incarceration exhibiting a wanton disregard for the Child's welfare.[3] Petitioners further averred that termination of Father's parental rights was in the best interest of the Child. Petitioners concomitantly filed a petition for adoption, asserting, *inter alia*, that adoption would be in the Child's best interest because Petitioners would be able to provide for the Child's health, welfare, and well being.

On May 31, 2018, the trial court conducted a hearing wherein Petitioners sought a default judgment against Mother and Father. Although Mother failed to appear at the hearing, Father appeared and contested the entry of a default judgment, requesting that the trial court appoint counsel to represent him throughout the termination proceedings. On June 7, 2018, the trial court entered an order finding Father to be indigent and appointing counsel to represent him.

Petitioners subsequently filed what was termed an amended petition on June 15, 2018, wherein Petitioners incorporated by reference most of the previous allegations stated in their original September 29, 2017 petition and enumerated additional statutory grounds for termination of Father's parental rights. Among the additional grounds were (1) that Father had abandoned the Child by willfully failing to visit the Child even after Father was placed on notice by personal service of the original petition, purportedly triggering a second four-month period of abandonment; (2) that Father had abandoned the Child by willfully failing to financially support the Child during a second four-month period; and (3) that Father had failed to manifest an ability and willingness to assume

---

[3] The ground of abandonment by an incarcerated parent was later withdrawn with respect to Father. Additional grounds for termination were alleged solely as to Mother.

legal and physical custody of or financial responsibility for the Child and that placing the Child in the Father's custody would pose a substantial risk of harm to the physical or psychological welfare of the Child. Absent from the Petitioners' amended petition was the previous allegation concerning Father's alleged incarceration.

Father filed a response to Petitioners' original petition on June 18, 2018, effectively denying all of the alleged grounds for termination of his parental rights and requesting that the trial court deny the petition. On June 19, 2018, the trial court entered an order appointing a guardian *ad litem* to represent the Child throughout the termination proceedings. On September 10, 2018, Father filed a response to Petitioners' amended petition, wherein he denied all of Petitioners' additional termination grounds and denied that termination of his parental rights was in the Child's best interest.

The trial court entered an order setting the case for trial on November 1, 2018, but the parties subsequently entered an agreed order to continue the trial to February 11, 2019. At the conclusion of the February 11, 2019 trial, after considering testimony and receiving evidence proffered, the trial court directed the parties to submit briefs and proposed findings of facts and conclusions of law.

On May 7, 2019, the trial court entered as an order its "Findings of Fact and Conclusions of Law," wherein the court terminated Father's parental rights based upon clear and convincing evidence of the following grounds for termination: (1) Father had abandoned the Child by willfully failing to visit him in the four months prior to the filing of Petitioners' original petition and (2) Father failed to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child. The trial court found that Petitioners did not show by clear and convincing evidence that Father had abandoned the Child by willfully failing to support him during the four-month period preceding the filing of the original petition. In addition, the trial court determined by clear and convincing evidence that it was in the best interest of the Child to terminate Father's parental rights and allow the Child to be adopted by Petitioners.[4] Father timely appealed.

## II. Issues Presented

Father presents four issues on appeal, which we have restated slightly as follows:

1. Whether the trial court erred by allowing Petitioners to file their amended petition and present evidence in support thereof without

---

[4] Concerning concomitant entry of an order granting an adoption with entry of an order terminating parental rights, this Court has previously stated that "a better practice would be to allow any appeal of the termination order to become final before proceeding with entry of the adoption in order to avoid the risk that the adoption order might be set aside if the termination is reversed on appeal." *In re Joseph F.*, 492 S.W.3d 690, 709 (Tenn. Ct. App. 2016).

obtaining leave of court.

2. Whether the trial court erred by finding clear and convincing evidence of the statutory ground of abandonment by willful failure to visit the Child.

3. Whether the trial court erred by finding clear and convincing evidence of the statutory ground of failure to manifest an ability and willingness to assume legal and physical custody of or financial responsibility for the Child.

4. Whether the trial court erred by finding clear and convincing evidence that terminating Father's parental rights was in the Child's best interest.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). As our Supreme Court has explained:

The parental rights at stake are "far more precious than any property right." *Santosky* [*v. Kramer*], 455 U.S. [745,] 758-59 [(1982)]. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations

of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

\* \* \*

In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence," including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). In addition, as our Supreme Court has explained, this Court is required "to review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests." *In re Carrington H.*, 483 S.W.3d at 525.

IV. Amended Petition

As a threshold matter, Father contends that the trial court erred by allowing

Petitioners to file their June 15, 2018 amended petition without obtaining leave of court. Father specifically argues on appeal that Petitioners' amended petition was "not an amendment to the original termination petition filed but rather [was] a supplemental pleading subject to the provisions of Rule 15.04 of the Tennessee Rules of Civil Procedure" because the amended petition set forth "transactions or occurrences or events which [had] happened since the date of the pleading sought to be supplemented." Petitioners assert that their June 15, 2018 petition was an amended pleading governed by Tennessee Rule of Civil Procedure 15.01. The trial court agreed in its final order, stating: "Petitioners' Amended Petition sets forth no transactions or occasions or events which have happened since the date of the pleading sought to be supplemented; therefore, the amended grounds relate back to the date of the original pleading."

Tennessee Rule of Civil Procedure 15.01 provides in relevant part that a "party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served." Here, Petitioners filed their original petition on September 29, 2017. Prior to the filing of any responsive pleading, Petitioners filed their amended petition on June 15, 2018.

Tennessee Rule of Civil Procedure 15.03 states in pertinent part, "[w]henever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In contrast, Tennessee Rule of Civil Procedure 15.04, upon which Father relies, provides in relevant part, "[u]pon motion of a party the court may . . . permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."

Father posits that the June 15, 2018 amended petition was, in effect, a supplemental pleading subject to the requirements of Rule 15.04. In support of his position, Father quotes the following exchange between the trial court and Petitioners' former counsel during trial:

| | |
|---|---|
| Trial Court: | [W]hy did you file that? |
| Petitioners' Counsel: | Why did I file the amended petition? |
| Trial Court: | Uh-huh (affirmative). |
| Petitioners' Counsel: | We were here by default and on that day Your Honor ruled that we could not proceed by default on that date and appointed Mr. . . . |
| Trial Court: | But I mean why did you file this? Did you add |

|                      |                                                                                 |
| -------------------- | ------------------------------------------------------------------------------- |
|                      | a new ground?                                                                   |
| Petitioners' Counsel: | Yes, Your Honor.                                                                |
| Trial Court:         | All right. And were the events of that new ground – did they occur since the filing of the original petition? |
| Petitioners' Counsel: | On two of them, yes.                                                            |
| Trial Court:         | All right. Which two?                                                            |
| Petitioners' Counsel: | The – the new [four-month] periods.                                             |
| Trial Court:         | I know, but which two grounds?                                                   |
| Petitioners' Counsel: | Willful failure to support and willful failure to visit.                        |

Father contends that this exchange demonstrates that Petitioners were required to obtain leave of the court to plead the alleged new grounds of willful failure to support and willful failure to visit because those additional grounds could only be properly pled by supplemental pleading under Tennessee Rule of Civil Procedure 15.04. In further support of his position, Father relies on this Court's decision in *In re Chase L.*, No. M2017-02362-COA-R3-PT, 2018 WL 3203109 (Tenn. Ct. App. Jun. 29, 2018).

In *Chase L.*, the petitioner sought to terminate the mother's parental rights. *Chase L.*, 2018 WL 3203109, at *1. Subsequent to the initial petition's filing, the mother of the child was arrested and incarcerated for several months. *Id*. at *2. Following the mother's incarceration, the petitioner filed "what [was] termed an amended petition to terminate Mother's parental rights," alleging two additional grounds, one of which was abandonment by an incarcerated parent due to the mother's incarceration after the filing of the original petition. *Id*. Concerning the characterization of the "amended petition," this Court concluded that the "amended petition should be considered a supplemental pleading" because "[r]ather than merely includ[ing] additional factual averments concerning the grounds previously alleged or address[ing] deficiencies related to procedural rules applicable in termination proceedings, the 'amended' petition sets forth an entirely new ground based upon events that occurred following the filing of the initial petition." *Id*. at *10. As such, the *Chase L.* Court determined that the petitioner's attempt to raise the ground of abandonment by an incarcerated parent was governed by Rule 15.04 rather than Rule 15.01. *Id*. at *9.

Although alleging two additional new grounds based on events occurring

following the filing of the initial petition, unlike the petitioner in *Chase L.*, the instant Petitioners also alleged in their amended petition the new ground of failure to manifest an ability and willingness to personally assume legal and physical custody of or financial responsibility for the Child predicated on the same facts that were present when Petitioners filed their original petition. As a factual basis for this new ground, Petitioners alleged that Father had not visited, financially supported, or taken any steps to build a relationship with the Child since 2014. Ergo, the facts providing a basis for this third ground "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." *See* Tenn. R. Civ. P. 15.03. We therefore conclude that the trial court did not err when (1) considering Petitioners' amended petition an amended pleading pursuant to Rule 15.01 with regard to the ground of failure to manifest an ability and willingness to assume legal and physical custody or financial responsibility of the Child and (2) determining that Petitioners did not need to obtain leave of court in order to add this statutory ground for termination of Father's parental rights, provided that proper notice of the new ground was given to Father.

Father also claims that by alleging a subsequent determinative four-month period for the two grounds of abandonment in their amended petition, as well as adding an allegation that Father had willfully failed to visit or support after being served with the original petition, Petitioners filed a supplemental pleading governed by Rule 15.04 as to those grounds. We agree. Pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv) (2017), the determinative period for consideration of willful failure to visit or support is the "four (4) consecutive months immediately preceding the filing of a termination petition." Petitioners stated in their June 15, 2018 amended petition that the relevant four-month period for these new alleged grounds of abandonment was February 15, 2018, through June 14, 2018, and that this four-month period was "[i]n addition to the . . . time periods laid out in the Original Petition." Because Petitioners relied on "events which have happened since the date of the [original petition]," Petitioners should have sought leave of court pursuant to Rule 15.04 concerning the additional abandonment grounds. *See* Tenn. R. Civ. P. 15.04. By filing this supplemental pleading without obtaining leave of court, Petitioners failed to satisfy the requirements of Rule 15.04 as to these additional new grounds. *See Chase L.*, 2018 WL 3203109, at *10.

We note, however, that in terminating Father's parental rights on the ground of willful failure to visit, the trial court properly found that the applicable four-month period spanned May 28, 2017, through September 28, 2017, as alleged in the original petition. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014); *see also In re J.G.H., Jr.*, No. W2008-01913-COA-R3-PT, 2009 WL 2502003, at *13 (Tenn. Ct. App. Aug. 17, 2009) (interpreting the determinative four-month period as the four months immediately preceding the filing of the original petition, not the amendment). We will therefore confine our review of the facts related to abandonment by willful failure to visit to this determinative period ("Determinative

Period").[5]

Additionally, we note that although the trial court terminated Father's rights on the ground of abandonment by willful failure to visit related to the Determinative Period, the court also determined in the "Findings of Fact" section of its final order that Father had willfully failed to visit the Child during the subsequent four-month period alleged by Petitioners. Inasmuch as we have determined that the alleged two new grounds of abandonment relating to the subsequent four-month period constituted a supplemental pleading filed without leave of court, we further determine that the trial court unnecessarily made findings of fact as to the abandonment grounds for this subsequent time period. Because we conclude that the trial court's error in this regard was harmless, we will proceed to review the statutory grounds under which Father's parental rights were terminated, including the abandonment ground related to the original Determinative Period.

## V. Statutory Grounds for Termination of Father's Parental Rights

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

(a) The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.

* * *

(c) Termination of parental or guardianship rights must be based upon:

(1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) That termination of the parent's or guardian's rights is in the best interests of the child.

---

[5] Father also argues that he did not try by implied consent the issues of abandonment by willful failure to support and willful failure to visit for the February 2018 through June 2018 period. *See* Tenn. R. Civ. P. 15.02. We determine this argument to be moot because the trial court found that the applicable determinative period for the ground of abandonment by willful failure to visit was May 28, 2017, through September 28, 2017.

The trial court determined that the evidence clearly and convincingly supported a finding of two statutory grounds to terminate Father's parental rights: (1) abandonment by willful failure to visit the Child and (2) failure to manifest an ability and willingness to assume custody of or financial responsibility for the Child. We will address each statutory ground in turn.

## A. Statutory Abandonment by Willful Failure to Visit

The trial court terminated Father's parental rights based on the statutory ground that he had abandoned the Child by willfully failing to visit him. Tennessee Code Annotated § 36-1-113(g)(1) provides in relevant part:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred; . . .

Petitioners filed their original petition on September 29, 2017. Therefore, the definition of abandonment contained within Tennessee Code Annotated § 36-1-102(1)(A)(i) (2017) applies, providing in pertinent part:[6]

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

---

[6] Effective July 1, 2018, the General Assembly has amended Tennessee Code Annotated § 36-1-102(A) to substitute the phrase, "proceeding, pleading, petition, or any amended petition," in place of "proceeding or pleading." *See* 2018 Tenn. Pub. Acts, Ch. 875, § 1 (H.B. 1856). Pursuant to the same amendment, the words, "willful" and "willfully," have been deleted wherever they previously appeared in subsection -201(1), and a new subsection, -102(1)(I), has been added, providing that the "absence of willfulness" shall be an affirmative defense to abandonment for failure to visit or support, for which "[t]he parent or guardian shall bear the burden of proof." *See id.* at § 2. Inasmuch as the instant action was filed in September 2017, we will confine our analysis in this Opinion to the version of Tennessee Code Annotated § 36-1-102 in effect at that time.

Pursuant to the applicable version of the statute, the trial court must find that a parent's failure to visit was willful. *See In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007). As this Court has previously explained:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. Section 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

*In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005).

Failure to visit a child is willful when a person is "aware of his or her duty to visit . . . has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *Id*. at 864. This Court has further explained:

> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*Id*.

Although Father does not dispute the fact that he failed to visit the Child during the Determinative Period, Father argues that the trial court erred by finding that his failure to visit was willful for two reasons. First, Father contends that his failure to visit the Child was not willful because his attempts to develop a relationship with the Child were "strained by the actions of others." Specifically, Father argues that he was restrained from visiting the Child by reason of Mother's filing an "affidavit of no visitation" during his divorce proceedings with Mother. Father avers that the court that granted the divorce ("the divorce court") subsequently entered a no-visitation order. Although the alleged "affidavit of no visitation" and subsequent no-visitation order issued by the divorce court are not found within the appellate record, the record does indicate, and the trial court found, that the "affidavit of no visitation" did not prohibit Father from contacting the Child by telephone or email. Furthermore, in his appellate brief, Father admits that the no-visitation order was set aside after a final decree of divorce was entered by default judgment in June 2014. Father still made no cognizable attempts to contact the Child.[7] The trial court also found that "Father admit[ted] he could

---

[7] As the trial court found, the record indicates that the reason the divorce court granted Mother's divorce by default judgment in 2014 was because Father was not present for any of the divorce proceedings by

have tried harder to support or have visitations with" the Child. Based on our thorough review of the record, we determine Father's argument in this regard to be unavailing.

Our Supreme Court has held that a prior order suspending a parent's visitation does not necessarily preclude a finding that the parent willfully failed to visit the child. *See In re Adoption of Angela E.*, 402 S.W.3d 636, 642 (Tenn. 2013). In *Angela E.*, the father's visitation had been suspended by the trial court for approximately three years. *Id*. During that time, the father had filed a petition to reinstate visitation but had taken no further action to pursue the matter for two years. *Id*. The Supreme Court recognized that the parent had made no attempt to see his children until after the termination petition was filed and had provided no reasonable excuse for not pursuing his petition. *Id*. As such, the High Court concluded that the father was not "actively trying to maintain visitation." *Id*. Consequently, the Court held that "the prior order suspending Father's visitation rights did not preclude a finding that Father willfully failed to visit the children." *Id*. In this case, the record is devoid of any attempt by Father to reinstate his visitation. Because the alleged order suspending Father's visitation does not preclude a finding of willfulness, Father is not entitled to relief based on this purported prior order.

Second, Father contends that Petitioners and Mother interfered with his attempts to develop a relationship with the Child. In support of this argument, Father relies on *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003), in which this court set forth several examples of conduct that constituted an interference with a parent's ability to visit, including blocking a parent's access to the child, keeping the child's whereabouts unknown, vigorously resisting the parent's efforts to support the child, and vigorously resisting a parent's efforts to visit the child.

In the instant action, Father avers that he and the maternal grandfather of the Child worked for the same employer and that Father would inquire as to whether the maternal grandfather knew of a means through which Father could contact Mother in order to arrange a visit with the Child. Father claims that the maternal grandfather generally responded that he had not spoken with Mother in a while and did not know how Father could contact Mother. Father also avers that the maternal grandfather never indicated to Father that Petitioners had custody of the Child. As a result, Father claims that because he had no knowledge of the whereabouts of the Child, his failure to visit the Child was not willful.

Petitioners contend that Father's assertion that he made genuine attempts to visit the Child was not supported by any credible evidence. The maternal grandmother testified that Father did not attempt to make any phone calls, mail any birthday cards, or make efforts to access the Child despite Father's knowledge of Petitioners' address and

_____

reason of his relocation to Ohio earlier that year to reside with his paramour.

- 12 -

knowledge that he could contact the Child through Petitioners, with whom he was well acquainted based on having previously shared the same place of employment with the maternal grandfather. In its final order, the trial court found that Father's reliance on *In re Adoption of Muir*, 2003 WL 22794524, was "not applicable to the facts of this matter because there was no conduct by Petitioners or [Mother] which amounted to an interference with or a significant restraint of [Father's] ability to visit [the Child] and [Father] admits in his testimony that he could have done more."

The trial court further found by clear and convincing evidence that Father had not maintained any contact with the Child despite having opportunities to do so and that Petitioners had not denied visitation to Father. Furthermore, the trial court found that Father knew, or by reasonable means could have ascertained, where the Child was residing but that Father failed to do so. Based on these findings, the trial court determined that Father's failure to visit the Child was willful. We agree.

We recognize that "[a] parent cannot be said to have abandoned a child when his failure to visit . . . is due to circumstances outside his control." *In re Adoption of Angela E.*, 402 S.W.3d at 640 (citing *In re Adoption of A.M.H.*, 215 S.W.3d at 810). However, a parent's failure to visit is not excused by someone else's conduct unless the conduct actually prevents the parent from visiting or "amounts to a significant restraint of or interference with the parent's efforts to develop a relationship with a child." *In re Audrey S.*, 182 S.W.3d at 863-64. Although Father "was under no requirement to seek court assistance to enforce his visitation rights," "taking legal action to enforce visitation rights can preclude a finding of willfulness." *In re Braxton M.*, 531 S.W.3d 708, 727 (Tenn. Ct. App. 2017) (quoting with approval *In re Gavin G.*, No. M2014-01657-COA-R3-PT, 2015 WL 3882841, at *7 (Tenn. Ct. App. June 23, 2015)). Lastly, any efforts a parent makes to visit a child after a petition to terminate parental rights has been filed do not negate or provide repentance for prior abandonment. *See* Tenn. Code Ann. § 36-1-102(1)(F); *In re S.R.M.*, E2008-01359-COA-R3-PT, 2009 WL 837715, at *12 (Tenn. Ct. App. Mar. 27, 2009).

We conclude that the evidence preponderates in favor of the trial court's determination that there was no conduct by Petitioners or Mother which "amount[ed] to a significant restraint of or interference with" Father's ability to visit and develop a relationship the Child during the Determinative Period. We therefore conclude that the combined weight of the evidence supports the trial court's finding by clear and convincing evidence that Father's failure to visit was willful. *See In re Audrey S.*, 215 S.W.3d at 863-64. We affirm the trial court's termination of Father's parental rights based on this statutory ground.

### B. Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility of the Child

Initially, we note that because we have determined that the amended petition constituted an amended pleading, pursuant to Tennessee Rule of Civil Procedure 15.01, the alleged ground of failure to manifest an ability and willingness to assume custody or financial responsibility of the Child relates back to the date of the filing of the original petition. *See* Tenn. R. Civ. P. 15.03. Father contends that Petitioners failed to present clear and convincing evidence to support termination of his parental rights pursuant to Tennessee Code Annotated § 36-1-113(g)(14) (2017). This subsection, which was added to the statutory framework effective July 1, 2016, *see* 2016 Tenn. Pub. Acts, Ch. 919 § 20 (S.B. 1393), provides as an additional ground for termination:[8]

> A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Upon our careful review of the record, we determine that the trial court did not err in finding that clear and convincing evidence existed to support this statutory ground for termination of Father's parental rights.

This Court has recently explained the following with regard to this ground for termination of parental rights:

> Essentially, this ground requires [the petitioners] to prove two elements by clear and convincing evidence. First, [the petitioners] must prove that [the parent] failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child[ren]." Tenn. Code Ann. § 36-1-113(g)(14). [The petitioners] must then prove that placing the children in [the parent's] "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." *Id.*
>
> * * *
>
> We have made the following observations about what constitutes "substantial harm":
>
> > The courts have not undertaken to define the circumstances
> > that pose a risk of substantial harm to a child. These

---

[8] Effective July 1, 2018, Tennessee Code Annotated § 36-1-113(g)(14) has been amended to substitute the phrase, "A parent," in place of "A legal parent." *See* 2018 Tenn. Pub. Acts, Ch. 875, § 12 (H.B. 1856). This amendment is not applicable to the instant action.

- 14 -

circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001) (footnotes omitted).

*In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7-8 (Tenn. Ct. App. Apr. 4, 2018) (additional internal citations omitted).

This Court has held that the first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires the petitioner to prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child. *In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *14 (Tenn. Ct. App. June 20, 2018); *but see In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018) (reversing this ground for termination when parents were unable but willing to assume custody and financial responsibility of their children). Regarding willingness, a parent's actions can demonstrate a lack of willingness to assume custody of or financial responsibility for the Child. *See In re Keilyn O.*, No. M2017-02386-COA-R3-PT, 2018 WL 3208151, at *8 (Tenn. Ct. App. June 28, 2018); *In re Amynn K.*, 2018 WL 3058280, at *15.

Concerning the first element of this statutory ground, the trial court determined that Petitioners had proven by clear and convincing evidence that Father had not manifested an ability and willingness to personally assume legal and physical custody of the Child or financial responsibility for the Child. Father testified that he was gainfully employed and financially capable of supporting the Child at the time of trial. However, the trial court found and the record supports that Father had been gainfully employed for all time periods relevant to the original petition, yet Father had ceased paying child support after July 17, 2017. Father testified that his failure to pay child support was because he did not know where to send future support payments. Father took no affirmative steps to comply with his child support payments until November 2018, notably after the filings of the original and amended petitions.

Although Father testified that he maintained a home suitable for the Child, Father testified as follows concerning which residential arrangement was best for the Child:

- 15 -

| | |
|---|---|
| Father's Counsel: | Okay. Would you agree that at this point in time it's best for [the Child] to stay with [Petitioners]? |
| Father: | Oh, definitely. I've from day one have never said that I want to take [the Child] out of [Petitioners'] care . . . I would, you know, never try to take [the Child] from [Petitioners] or any part of that side of [the Child's] family. You know, that's [the Child's] family. |
| Father's Counsel: | Okay. So is – is it your position here today then that you think [the Child] needs to stay where [the Child is] at, you just want the door to remain open to you having a relationship with [the Child]? |
| Father: | Yes, sir. |

Father further acknowledged that he could have "tried harder to support or have visitations with" the Child. The trial court found that Father had not contacted the Child since October 2015, further indicating that Father did not exhibit an ability and willingness to personally assume legal and physical custody of or financial responsibility for the Child. Upon our careful review of the record, we conclude that clear and convincing evidence supported a finding that Father failed to manifest an ability and willingness to assume physical or legal custody of or financial responsibility for the Child. As such, the first element of this ground for termination has been satisfied.

The second element of this statutory ground requires Petitioners to prove by clear and convincing evidence that placing the Child in Father's legal and physical custody "would pose a risk of substantial harm to the physical or psychological welfare of the child." Tenn. Code. Ann. § 36-1-113(g)(14). Father claims that the trial court's order terminating his parental rights does not address this second element.

The trial court entered a sixteen-page order containing fifty-three paragraphs of findings of facts and six paragraphs of conclusions of law. In the order, the trial court did not identify specific factual findings and conclusions of law related to each ground for termination separately, but did elucidate factual findings that could apply to one or more of the grounds. In its stated conclusions of law, the trial court determined that each statutory ground had been proven by clear and convincing evidence. However, the trial court failed to include a direct correlation between each statutory ground and the factual findings pertaining to that ground. Despite the order's lack of clarity in this regard, we

conclude that taken as a whole, the order provides sufficient findings of fact and conclusions of law to support the trial court's decision to terminate Father's parental rights respecting the two statutory grounds and does not require this Court to remand the case for additional findings. *See, e.g., In re Jaxx M.*, No. E2018-01041-COA-R3-PT, 2019 WL 1753054, at *4 (Tenn. Ct. App. Apr. 17, 2019) (concluding that "[a]lthough the order is not a model of clarity . . . when read as a whole, it provides sufficient findings of fact and conclusions of law to support the decision and does not necessitate a remand from this Court for additional findings."). Accordingly, we will review whether the evidence supports the trial court's determination by clear and convincing evidence that placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Relevant to the second element of this statutory ground, the trial court made the following findings of fact in its May 7, 2019 order:

> That there has been no contact with the child by Father since Petitioners obtained custody.

> That [Father] has not had any contact with [the Child] in five (5) years, nor has Father contacted [the maternal aunt], [], whose address has remained the same from the time [Father] was at her home during [Father's] marriage [to Mother].

> That [Father] do[es] not have any relationship with the child and [has] not shown concern or interest in the safety, security, and nurturing needs of the child.

> That Petitioners have provided to [the Child] a safe, stable, and permanent home where he has thrived after Petitioners initially worked on emotional issues and due to Bentley having ADHD, he is involved through Petitioner's efforts in counseling every two to three months for thirty minutes to an hour.

> That Respondent Father testified that it is better for Bentley to remain with the Petitioners and he does not want to disturb that relationship.

> That Respondent Father testified he . . . used drugs during the time of Bentley's birth.

(Paragraph numbering omitted.) Predicated on its findings of fact, the trial court concluded "[t]hat by clear and convincing evidence the record in this case establishes that a change of caretakers and physical environment is likely to have a harmful effect on the

child's emotional and psychological conditions as testified to by [the maternal grandmother], [Mother], and [maternal aunt]."

Father acknowledged at trial that he had "a checkered past." Specifically, Father testified that he had been convicted of theft on two occasions, with the most recent occasion occurring "a few years" prior to trial. Father was incarcerated for that offense. Father further testified that he had been charged with driving under the influence ("DUI") on two occasions, the second of which resulted in the revocation of Father's driver's license. Father acknowledged his illegal drug use after the Child was born but prior to his divorce with Mother. Mother testified that she and Father had used marijuana and "bath salts" together. Despite Father's testimony that he had "not been on drugs in years," Mother testified that as recently as a week and a half before trial, she had observed Father at a known drug dealer's house.

Mother further testified that Father abused her "[t]he whole time [Mother and Father] were married." Mother stated that Father had "busted [her] head open" and that after the Child was born, Father "tried to suffocate [Mother] and tried to drown [Mother] one time." She stated that Father would "smack [her] around." In addition, Mother testified that the Child witnessed at least two incidents of Father's abuse of Mother. The maternal grandmother also testified concerning Father's alleged abuse of Mother, stating that Petitioners had "seen many times he's busted [Mother's] head, [Mother's] mouth. [Father] tried to suffocate [Mother]. [Father] tried to drown [Mother] one time." The maternal grandmother testified that on one occasion, she had witnessed Father hit Mother. The maternal grandmother also testified that the Child "made a comment one time that somebody took a pillow across his mother's face and wouldn't let her up."

In addition to concerns regarding the DUI charges, theft convictions, prior drug use, and allegations of abuse, we note that Father had not maintained any contact with the Child and that according to Father's own testimony, he did not have a current relationship with the Child. Furthermore, the Child had been residing with Petitioners since they obtained custody of the Child in October 2015. The Child had bonded with Petitioners, who wished to adopt him and had ensured that the Child had received the counseling and care necessary to treat the Child's ADHD and emotional conditions allegedly stemming from the Child's previous exposure to Mother's and Father's household. By the time of trial, Father had gone approximately five years without contacting or visiting the Child. The trial court consequently found that the Child did "not know [Father], especially as his Father" at least in part because Father had "not shown concern or interest in the safety, security, and nurturing needs of the child." Father's lack of presence in the Child's life posed a sufficient probable risk of substantial harm to the Child's psychological welfare if Father were to suddenly obtain custody of the Child.

Based on the foregoing, we conclude that the evidence did not preponderate against the trial court's factual findings, the combined weight of which established by

clear and convincing evidence that placing the Child in Father's legal and physical custody would pose a risk of substantial harm to the physical and psychological welfare of the Child. Accordingly, we affirm the trial court's determination by clear and convincing evidence regarding this statutory ground for termination of Father's parental rights.

## VI. Best Interest of the Child

Father contends that the trial court erred in finding by clear and convincing evidence that termination of his parental rights was in the best interest of the Child. Upon careful review, we disagree. When a parent has been found to be unfit by establishment of at least one statutory ground for termination of parental rights, as here, the interests of parent and child diverge, and the focus shifts to what is in the child's best interest. *In re Audrey S.*, 182 S.W.3d at 877; *see also In re Carrington H.*, 483 S.W.3d at 523 ("'The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination.'" (quoting *In re Angela E.*, 303 S.W.3d at 254)). Tennessee Code Annotated § 36-1-113(i) (2017) provides a list of factors the trial court is to consider when determining if termination of parental rights is in a child's best interest. This list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *See In re Carrington H.*, 483 S.W.3d at 523; *In re Audrey S.*, 182 S.W.3d at 878 ("The relevancy and weight to be given each factor depends on the unique facts of each case."). Furthermore, the best interest of a child must be determined from the child's perspective and not the parent's. *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

Tennessee Code Annotated § 36-1-113(i) lists the following factors for consideration:

(1)     Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2)     Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3)     Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4)     Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

As our Supreme Court has explained regarding the best interest analysis:

"The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." In re Angela E., 303 S.W.3d at 254.

When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. In re Carrington H., 483 S.W.3d at 523 (citing In re Audrey S., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." In re Kaliyah S., 455 S.W.3d [533,] 555 [(Tenn. 2015)] (citing In re Audrey S., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to

determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." Id. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." In re Audrey S., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. Id. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. In re Audrey S., 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. White v. Moody, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. See In re Audrey S., 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. In re Carrington H., 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." In re Audrey S., 182 S.W.3d at 878 (citing White v. Moody, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

We note initially that the trial court, when conducting its best interest analysis, made many of its factual findings based on a clear and convincing evidence standard. As stated above, however, "[f]acts considered in the best interests analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d at 681 (quoting *In re Kaliyah S.*, 455 S.W.3d at 555). Only after making the relevant factual findings by applying the preponderance of the evidence standard should the trial court consider whether the weight of the evidence amounts to clear and convincing evidence that termination of parental rights is in the best interest of the child. *See In re Gabriella D.*, 455 S.W.3d at 555 (citing *In re Kaliyah S.*, 455 S.W.3d at 555).

- 21 -

Notwithstanding the trial court's use of the clear and convincing evidence standard when making certain factual findings, we will first review whether the evidence preponderates in favor of or against the relevant factors and then consider whether the combined weight of the proven facts amounts to the higher clear and convincing evidentiary standard to support the best interest finding. *See In re Carrington H.*, 483 S.W.3d at 535 (concluding that "[f]acts relevant to a child's best interests <u>need only be</u> established by a preponderance of the evidence, although [Petitioners] must establish that the combined weight of the proven facts amounts to clear and convincing evidence that termination is in the child's best interests."). We consider the trial court's misapplication of the clear and convincing evidence standard relative to its factual findings regarding the best interest factors to be harmless error because the trial court employed a higher standard than the applicable preponderance of the evidence standard. *See id.*

On appeal, Father argues that five of the nine statutory factors militate against terminating his parental rights. Concerning the first factor, Father posits that "the evidence presented at trial shows that he is presently employed and able to provide a safe [and] stable home for [the Child]." Father further argues that the record "is devoid of testimony regarding the Father's present situation as each witness testified that they had not had any recent contact with the Father." However, Mother testified that she had seen Father at a known drug dealer's house less than two weeks prior to trial. During trial, Father alluded to his second theft conviction taking place "a few years ago" when he was in Ohio, which, according to Father's testimony, was sometime after his 2014 divorce with Mother.

As relevant to factors one and two, the trial court considered that Father had failed to make an adjustment in his circumstances, conduct, or conditions to make it safe and in the Child's best interest to be in the home of Father. *See* Tenn. Code Ann. § 36-1-113(i). As the trial court noted, Father acknowledged that the Child should remain with Petitioners in part because the Child did not recognize Father as his father. We determine that the evidence supports the trial court's finding that the first two factors weighed in favor of terminating Father's parental rights.

With regard to factors three and four, the trial court determined that Father had not maintained any contact with the Child since Petitioners were granted custody in October 2015. The record demonstrated that Father failed to attempt to contact the Child despite having access to reasonable means to do so. Father acknowledged that he could have tried harder to visit the Child and that he had no meaningful relationship with the Child. Therefore, these factors also weigh in favor of termination.

As relevant to factor five, the trial court found that a change in the Child's caretakers and physical environment would likely have a harmful effect on the Child's emotional and psychological conditions, as expressed by three witnesses. When asked

whether it would be mentally and emotionally harmful to the Child to be removed from Petitioners' home, the maternal aunt testified, "It would be devastating. . . . Absolutely. Absolutely." The maternal grandmother also testified that removal of the Child from Petitioners' home would be detrimental to the Child. In addition, Mother testified that she believed it was in the best interest of the Child to remain with Petitioners, stating that Petitioners took care of the Child's physical, emotional, and financial needs. As noted previously, Father also acknowledged that it was in the Child's best interest to remain with Petitioners at the time of trial.

As to the sixth and seventh factors, Father argues that no evidence was presented "suggesting the Father [had] shown brutality, abuse or neglect towards the child." In addition, Father claims that his home would be a healthy and safe environment for the Child and that Father had no substance abuse problem at the time of trial that would have rendered him unfit. We note that the trial court did not expressly weigh these factors either in favor of or against termination of Father's parental rights. Although Father argues that the photographs of his current residence demonstrated that his home was clean and safe, two witnesses asserted that Father had been abusive toward Mother and that the Child had witnessed at least one occasion of such domestic abuse. The Child, age seven at the time of trial, was also required to regularly consult a specialist for emotional issues purportedly stemming from the Child's previous exposure to Mother's and Father's household environment.

Concerning the eighth factor, Father contends that no evidence suggested that his mental or emotional state would be detrimental to the Child. The trial court made no specific findings concerning this factor, and we agree that little evidence was presented in this regard. We therefore determine that this factor does not weigh in favor of termination. Lastly, Father argues that the ninth factor favors maintaining his parental rights because he had paid "in excess of $6,000 as support for the minor child from 2014 to 2017." Although Father did pay child support from December 10, 2014, until July 17, 2017, the trial court found that Father ceased paying his child support obligation for over a year "although he admit[ted] repeatedly in his testimony that he [knew] he [had] a child support obligation, and he took no steps to establish the child support obligation in accordance with child support guidelines."

The trial court properly considered the statutory best interest factors in determining that those factors weighed against preserving Father's parental rights to the Child. Based on our thorough review in light of the statutory factors, we conclude that the evidence presented does not preponderate against the trial court's determination by clear and convincing evidence that termination of Father's parental rights was in the best interest of the Child. Having also determined that statutory grounds for termination were established by the same quantum of proof, we affirm the trial court's termination of Father's parental rights.

## VII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial

court's judgment terminating Father's parental rights and collection of costs assessed below. Costs on appeal are assessed to the appellant, George C.

_____
THOMAS R. FRIERSON, II, JUDGE